## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| **ETHEL BARNES,** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO.** |
| | **5:18-cv-00241-TES** |
| **GUARANTEED PRICE MOVERS, LLC, and CITY MOVING, INC.,** | |
| *Defendants.* | |

## ORDER DENYING MOTION TO SET ASIDE DEFAULT JUDGMENT AND ORDER OF ATTORNEY'S FEES

## BACKGROUND

Defendants Guaranteed Price Movers ("GPM") and City Moving ("CM") are

moving companies. GPM organized and currently exists under the laws of Arizona.

[Lehrman Decl., Doc. 24-2, ¶ 3]. Anat Lehrman ("Lehrman") serves as GPM's sole

member and one of its managers. [*Id*. at ¶¶ 3–6]. GPM registered with the California

Secretary of State as a foreign limited liability company and is authorized to do business

in California. [*Id*. at ¶ 7]. When it registered in California, GPM named Shimon

Feldman, Esq., as its registered agent. [*Id*. at p. 20]. GPM maintains its corporate office at

6319 Colfax Avenue, Floor 2, North Hollywood, CA 91606, and a warehouse at 2507 Medford Street, Los Angeles, CA 90033.[1] [*Id.* at ¶¶ 8, 9].

CM incorporated and currently exists under the laws of California. [Oren Decl., Doc. 24-3, ¶ 4]. During 2018, Lior Oren was CM's President, CEO, CFO, and Secretary, and Carolina Vela was its registered agent. [*Id.* at ¶ 5]. GPM and CM have always shared employees and currently share both the Colfax Avenue and Medford Street locations. [*Id.* at ¶¶ 7, 8].

On July 5, 2018, Plaintiff Ethel Barnes ("Barnes") sued GPM and CM for damages arising out of their botched transportation and delivery of her personal belongings from Sherman Oaks, California, to Macon, Georgia. [Doc. 1]. Barnes's initial complaint erroneously named "City Movers, LLC" instead of "City Moving, LLC." [Doc. 29, p. 4]. On July 5, 2018, Barnes mailed a request to waive service to GPM and "City Moving." [*Id.*]. On September 5, 2018, Barnes learned of her mislabeling of CM and filed her First Amended Complaint [Doc. 3] to correct the misnomer two days later. Barnes mailed the amended complaint and a request to waive service to GPM and CM that same day. [Doc. 29, p. 4]. Barnes proceeded to serve GPM and CM on October 30, 2018. [Doc. 7]; [Doc. 8]. Dan Johnson, Barnes's process server, stated that he served Gus Arcos

---

[1] Records maintained by the California Secretary of State indicate that both GPM and CM listed the corporate office location on Colfax Avenue in 2019, well after the October 2018 service of process in this case. *Compare* [Doc. 24-2, p. 20] *with* [Doc. 24-3, p. 15].

("Arcos"), a joint GPM and CM employee, at the Medford Street location. [Doc. 7]; [Doc. 8].

Barnes's lawyer also mailed copies of the summons and complaint to GPM and CM on November 1, 2018. [Doc. 29, pp. 4–5]. Despite being served, GPM and CM did not answer, and upon Barnes's request, [Doc. 9]; [Doc. 10], the Clerk of Court entered default as to both GPM and CM pursuant to Federal Rule of Civil Procedure 55(a) on January 23, 2019. Barnes then filed a Motion for Default Judgment [Doc. 11] asking the Court to enter judgment against GPM and CM based on the entry of default. The Court held a hearing on March 19, 2019, to consider the issue of damages. [Doc. 12]. Based on the evidence presented at the hearing regarding the damage to her property, the Court granted Barnes's Motion for Default Judgment for $65,000, plus costs, against GPM and CM jointly and severally. [Doc. 13]. The Clerk then entered judgment in favor of Barnes. [Doc. 14].

On March 27, 2019, Barnes filed a Motion for Attorney's Fees [Doc. 15] asking for an award of $13,792.50, which the Court also granted. [Doc. 19]. On May 27, 2019, Barnes filed a Bill of Costs [Doc. 21], and on June 21, 2019, the Clerk of Court entered costs in the amount of $600 against both Defendants. [Doc. 22]. In sum, the Defendants owe Barnes just south of $80,000.00.

Over a year later, counsel for GPM and CM entered a Notice of Appearance of Counsel. [Doc. 23]. On April 23, 2020, GPM and CM filed a Motion to Set Aside Default

Judgments [Doc. 24], asking this Court to vacate or otherwise set aside the judgments entered against GPM and CM.

GPM and CM argue that this Court should set aside the judgments against them because Barnes failed to properly serve them with process, rendering this Court without the personal jurisdiction required to enter valid judgments against them. [Doc. 24-1, p. 7]. GPM and CM also argue that even if the Court ultimately upholds the underlying default judgment, it should nonetheless set aside the attorney's fees judgment because the Carmack Amendment, 49 USC § 14701 *et. seq.*, does not allow for an award of attorney's fees. [*Id*.].

Barnes argues that she properly served GPM and CM under California law as required by Federal Rule of Civil Procedure 4(e)(1). [Doc. 29, p. 5]. Not surprisingly, Barnes also contends that the Court properly awarded her attorney's fees. [*Id*. at p. 19].

This Motion has been fully briefed and is ready for consideration.

## DISCUSSION

Federal Rule of Civil Procedure 60(b) provides that a Court "may" relieve a party of a judgment entered against them. Fed. R. Civ. P. 60(b). GPM and CM ask the Court to relieve them of the default judgment entered against them because Barnes never properly served them, depriving the Court of personal jurisdiction, which would render any judgment void as a matter of law. *See* Fed. R. Civ. P. 60(b)(4). Thus, this case turns

on service. If Barnes served them right, she wins; if she didn't, she loses. It is that simple.

Federal Rule of Civil Procedure 4(h) provides that domestic corporations, like GPM and CM, may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A). Rule 4(e)(1), in turn, provides that an individual "may be served in a judicial district of the United States by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Barnes filed her complaint in the Middle District of Georgia, and she served GPM and CM in California. Thus, according to the plain text of Rule 4(e), if Barnes properly served GPM and CM under either California or Georgia law, her judgments survive.

### A.   California law

California law provides that service on corporations[2] must be made on "the person designated as agent for service of process" or on "the president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager, or a person authorized by the corporation to receive service of process." Cal. Civ. Proc. Code § 416.10(a) & (b). Here, Barnes served Arcos, GPM and

---

[2] As noted above, GPM is a limited liability company, and CM is a corporation. Chapter 4 of the California Code of Civil Practice, which controls service of process on corporations and includes §§ 416.10 and 415.20, equally applies to limited liability companies. *See* Cal. Civ. Proc. Code § 17701.16(a).

CM's joint employee, a moving crew leader. As GPM and CM correctly point out, Arcos did not hold any of the offices specified in § 416.10(a), nor was he a person upon whom service may be made on behalf of a corporation under §416.10(b). [Doc. 24-1, p. 14]. Barnes thus failed to satisfy the requirements of § 416.10.

But the analysis does not end there, thanks to California's "substitute service" provision:

> In lieu of personal delivery of a copy of the summons and complaint to the person to be served as specified in Section 416.10, . . . a summons may be served by leaving a copy of the summons and complaint during usual office hours in his or her office or, if no physical address is known, at his or her usual mailing address, other than a United States Postal Service post office box, with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. When service is effected by leaving a copy of the summons and complaint at a mailing address, it shall be left with a person at least 18 years of age, who shall be informed of the contents thereof. Service of a summons in this manner is deemed complete on the 10th day after the mailing.

Cal. Civ. Proc. Code § 415.20(a). Barnes argues that her service of process on Arcos satisfies the substitute service provision laid out in § 415.20(a). She's right.

As explained in the lengthy text block above, substitute service under § 415.20(a) requires (1) leaving the papers in the office of one of the persons specified in § 416.10 during usual office hours with a person who is apparently in charge of such office, or (2) leaving the papers at the usual mailing address of one of the persons specified in § 416.10 if no physical office address is known with a person 18 or older who is informed

of the contents of the papers, and (3) mailing a copy of the papers to the person at the same address where the substitute person was served.[3] To determine whether Barnes satisfied the requirements of § 415.20(a), the Court must consider the location of the service and the person actually served

### 1.   Location of service

On October 30, 2018, Barnes's process server went to GPM and CM's warehouse located at 2507 Medford Street, Los Angeles, California 90033, to serve GPM and CM. [Doc. 24-4, ¶¶ 6, 10]. The substitute-service statute requires a plaintiff to deliver service at the office of a person specified in § 416.10, or if a physical office address is unknown, at the usual mailing address of such a person. Cal. Civ. Proc. Code § 415.20(a). For GPM and CM, the Medford Street warehouse is both.

Both GPM and CM listed the Medford Street warehouse address as their mailing address on file with the Federal Motor Carrier Safety Administration [Doc. 29-5, p. 2]; [Doc. 29-6, p. 2] and the United States Department of Transportation. [Doc. 29-7, p. 2]; [Doc. 29-8, p. 2]. Further, on its Statement of Information filed with the California Secretary of State, CM identified the Medford Street warehouse address as its "principal executive office;" the "principal place of business office in California;" the address of its CEO, Secretary, and CFO (Oren); and also the address of Carolina Vela, its registered

---

[3] GPM and CM argue that Barnes did not exercise "reasonable diligence." [Doc. 33, p. 6]. But "reasonable diligence" is a requirement of Cal. Civ. Proc. Code § 415.20(b), not § 415.20(a). Barnes relies on § 415.20(a), which doesn't have any "reasonable diligence" requirement.

agent for service of process. [Doc. 29-9, p. 2]. Although the California Secretary of State does not have similar information as to GPM when Barnes served it (October 2018), the Court still has no trouble finding that the warehouse location constitutes both the office of a person specified in § 416.10, and the usual mailing address of such a person, for GPM service-of-process purposes. *See* [Lehrman Decl., Doc. 24-2, ¶ 9 ("GPM's warehouse facility is located at 2507 Medford Street, Los Angeles, California 90033 (the "Warehouse"))]; [Doc. 29-5, p. 2 (listing both GPM's business and mailing address as the warehouse)].

The Court thus concludes that the location of service—the Medford Street warehouse—qualifies as both the office of a person specified in § 416.10 (their CEO), and the usual mailing address of such a person. Cal. Civ. Proc. Code § 415.20(a). Barnes thus meets the first prong as to both defendants.

### 2.   Person served

Around lunch time on October 30, 2018, process server Dan Johnson went to the Medford Street warehouse location to serve process on CM and GPM. [Johnson Decl., Doc. 29-3, ¶¶ 7, 8, 14]. Johnson encountered several men inside having lunch. [*Id*. at ¶ 8]. Johnson asked to speak with the person in charge. [*Id*. at ¶ 9]. One of the men went into another office and asked Johnson to come into that office. [*Id*. at ¶ 10]. Inside that office, Arcos greeted Johnson and asked what he could do for him. [*Id*. at 11]. Johnson explained his need to serve court documents and showed Arcos the documents for both

GPM and CM. [*Id*. at ¶ 14]. Arcos stated that he was in charge and that he would accept both sets of documents. [*Id*. at 15]. Johnson told Arcos he should give the documents to the person who handles legal matters for the company. [*Id*. at 17]. Arcos is over the age of 18. [Arcos Decl., Doc. 24-4, ¶ 1]. GPM and CM employ Arcos as a moving crew leader. [*Id*. at ¶ 2].

GPM and CM argue that Arcos was not "apparently in charge" of the warehouse location because he is not "legally in charge" of the warehouse, and because Arcos is not someone who will, more likely than not, deliver the process to the named party. [Doc. 33, pp. 3–4]. This argument falls short because § 415.20(a) requires apparent authority—not actual or "legal" authority. *See* Cal. Civ. Proc. Code § 415.20(a) (requiring substitute service on one who is "apparently" in charge of the office). Whether Arcos was actually—or legally—in charge of the warehouse answers a question that § 415.20(a) does not ask. The process server's declaration, as shown above, definitively shows that Arcos was *apparently* in charge. [Johnson Decl., Doc. 29-3, ¶ 15 (Arcos told Johnson that he was in charge)].

GPM and CM rely on *Thao v. Law Offices of Christopher Glenn Beckom*, No. 1:17-cv-01298, 2018 WL 4092047, at *2 (E.D. Cal. Aug. 28, 2018), to support its argument that Arcos was not apparently in charge of the warehouse. [Doc. 33, p. 4]. In *Thao*, the process server handed the papers to a security guard who sat at the entrance to a gated complex. *Id*. The trial court ultimately held that service was improper under § 415.20. *Id*.

at *6. But in doing so, the trial court found no issue with service on the security guard because it was "more likely than not that they will deliver process to the named party." *Id*. at *5. Instead, the trial court found that the plaintiff failed to comply with § 415.20's mailing requirement—a requirement that, as discussed below, Barnes satisfied. *Id*. at *5–6. Thus, *Thao* doesn't help the Defendants.

In fact, GPM and CM's reliance on *Thao* bolsters Barnes's argument that Arcos was someone "apparently" in charge of the warehouse "office." GPM and CM argue that Arcos "is a laborer" and he "did not regularly handle legal matters." [Doc. 24-1, p. 16]. But neither was the security guard in *Thao*, whom the court found to be a proper person to receive process. *See* No. 1:17-cv-01298, 2018 WL 4092047, at *5. *See also Bein v. Brechtel-Jochim Group, Inc.*, 6 Cal. App. 4th 1387, 1392-93 (Cal. Ct. App. May 28, 1992) (finding that serving process on the security guard of a gated community is permissible under § 415.20). In sum, given Johnson's declaration that other GPM/CM employees referred him to Arcos when he asked who was in charge and Arcos himself told Johnson he was in charge and would get the legal papers to the right person in the company, the Court finds that Johnson correctly and appropriately left the service

10

papers with Arcos, who was "apparently in charge," so that Arcos was a proper person to serve process upon under §415.20(a).[4]

Even if GPM and CM could somehow conceivably show that Arcos was not "apparently in charge" of the Medford Street warehouse, Barnes's service on Arcos would still satisfy the requirements of § 415.20(a). As discussed above, the process server may leave the papers at the usual mailing address of the specified person *if no physical office address is known with a person 18 or older who is informed of the contents of the papers*, so long as the plaintiff mails a copy of the papers to the person specified in § 416.10 at the same address where the substitute person was served. Cal. Civ. Proc. Code § 415.20(a) (emphasis added). At the time of the service, there was no other "known" GPM or CM office besides the Medford Street warehouse, Arcos is over the age of 18 and Johnson told Arcos of the contents of the papers. [Johnson Decl., Doc. 29-3, ¶ 14].

GPM and CM's efforts to demonstrate that the Colfax Avenue location was "known" at the time of service fall well short. In his affidavit, Lehrman states that "GPM's corporate office and principal place of business is located at 6319 Colfax Avenue, Floor 2, North Hollywood, California 91606" at the time of service of process. [Lehrman Decl., Doc. 24-2, ¶ 8]. Likewise, Oren stated that CM's corporate office and

---

[4] The Court notes that although Arcos submitted a detailed affidavit, including the confusing and contradictory admissions that he was both "aware of the import of legal documents" [Doc. 24-4, ¶14] and "unaware of the [legal] documents' meaning or import" [*Id.* at ¶16], where he admits that Johnson served him, but doesn't deny any of the details in Johnson's affidavit regarding Arcos' telling him that he was in charge or that the other employees identified him as the man in charge.

principal place of business was located at the Colfax Avenue address at the time of service of process. [Oren Decl., Doc. 24-3, ¶ 7]. However, the Colfax Avenue address does not appear on GPM's California "Application to Register a Foreign Limited Liability Company." [Doc. 24-2, p. 20]. Nor does it appear on CM's California Articles of Incorporation. [Doc. 24-3, p. 11]. Nor does it appear on CM's Statement of Information filed with the California Secretary of State in September 2017. [Doc. 24-3, p. 13]. And, as mentioned above, the Colfax Avenue address does not appear on the information maintained by the Federal Motor Carrier Safety Administration, [Doc. 29-5, p. 2]; [Doc. 29-6, p. 2], or the United States Department of Transportation, [Doc. 29-7, p. 2]; [Doc. 29-8, p. 2].

True, the Colfax Avenue address does appear on both GPM and CM's Statements of Information filed with the California Secretary of State. [Doc. 24-3, pp. 15–16]. However, a close look at those documents reveals that the Colfax address did not appear until July 22, 2019, well after the attempted service in October 2018. Since the service of process took place well before GPM or CM added the Colfax Avenue location to any publicly-available documents, the Court has no trouble finding that the "if no physical address is known" and "at least 18 years of age" prongs in the California substitute service statute are satisfied here. Cal. Civ. Proc. Code § 415.20(a).

GPM and CM next argue that Barnes's proofs of service, [Doc. 7] and [Doc. 8], do not contain certain information required by Cal. Civ. Proc. Code § 417.10(a). [Doc. 33, p.

6–7]. The Judicial Council Comments to § 415.20(a) state that "[t]he process server must set forth in his affidavit of service facts showing that these requirements were complied with." Cal. Civ. Proc. Code § 417.10(a) Editor's Notes (Comment—Judicial Council) (pointing to § 417.10(a)). Section 417.10(a) states that the process server's affidavit "shall recite or in other manner show the name of the person to whom a copy of the summons and of the complaint were delivered, and, if appropriate, his or her title or the capacity in which he or she is served." Cal. Civ. Proc. Code § 417.10(a). Barnes filed proofs of service for both GPM, [Doc. 7], and CM, [Doc. 8]. Each states the name "Gus Arcos" as the person who was served, satisfying § 417.10(a). While neither of the proofs of service contain Arcos's title, § 417.10(a) clearly provides that the "title or the capacity in which he or she is served" is required *only* "if appropriate." Cal. Civ. Proc. Code § 417.10(a). Barnes did not serve GPM and CM under § 416.10, but under the substitute service provision found in § 415.20(a). This means that Arcos's title, or position in the company, is nether relevant nor required as it would be under § 416.10. Further, the proof of service was submitted on the standard "Summons in a Civil Action" form (AO 440). And finally, Johnson's affidavit [Doc. 29-3] lays out in great de

tail the facts relevant to the service of process from which the Court can determine compliance with § 415.20(a). In sum, the Court finds Barnes's proofs of service to be satisfactory. [Doc. 7]; [Doc. 8].

### 3. Mail requirement

Lastly, a plaintiff availing herself of substitute service under § 415.20(a) must

"mail . . . a copy of the summons and complaint by first-class mail, postage prepaid to

the person to be served at the place where a copy of the summons and complaint were

left." Cal. Civ. Proc. Code § 415.20(a). GPM and CM argue that "[t]here is no evidence

Plaintiff undertook the second step and mailed the summonses and complaint to

Defendants." [Doc. 33, p. 7]. Attorney Mark Barnes's Declaration, however,

unequivocally and clearly states that on November 1, 2018, he mailed copies of the

summons and complaint to GPM and CM via First Class Mail to the Medford Street

address.[5] [Barnes Decl., Doc. 29-4, ¶ 18]. Service of the summons upon GPM and CM is

deemed complete 10 days after the mailing, which is November 11, 2018. Cal. Civ. Proc.

Code § 415.20(a). Accordingly, Barnes has satisfied the requirements of §415.20(a).

### 4. Conclusion

In sum, Barnes perfected service on both GPM and CM under California law.[6]

This satisfies Federal Rule of Civil Procedure 4(e)'s requirement that service be made in

---

[5] GPM and CM point out, correctly, that Barnes's "Exhibit 10" [Doc. 29-10] shows a certified mail receipt dated "6/27/16." Exhibit 10, therefore, is not evidence that Barnes mailed GPM and CM the summons and complaint on November 1, 2018. But Barnes's statement in his Declaration, discussed in the body above, is evidence that he complied with § 415.20(a)'s mail requirement. GPM and CM do not address the fact that Barnes's declaration asserts he mailed the summons and complaint on November 1, 2018. Nor do they claim Barnes's statement is untrue. Therefore, the Court finds that Barnes has provided sufficient evidence that he mailed the summons and complaint as required by § 415.20(a).

[6] Because Barnes properly served GPM and CM under California law, the Court need not undertake an analysis under Georgia law. However, the Court notes that Georgia's longarm statute, like the federal

compliance with "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).[7] Accordingly, because Barnes properly served GPM and CM with her suit, the Court correctly exercised personal jurisdiction over them and their Motion to Set Aside Default Judgment [Doc. 24] is **DENIED**.

### B.   <u>Attorney's fees</u>

After this Court granted Barnes a $65,000 Default Judgment, plus costs, [Doc. 13], the Court granted Barnes's motion for attorney's fees in the amount of $13,792.50. [Doc. 15]; [Doc. 16]; [Doc. 17]. GPM and CM argue that this Court should set aside its award of attorney's fees because the Carmack Amendment flatly prohibits such an award. [Doc. 24-1, p. 19]; [Doc. 33, pp. 9–10].

---

rules, allows for service according to the law of the state where service is made. O.C.G.A. § 9-10-94. Therefore, because Barnes properly served both Defendants under California law, she properly served them under Georgia law.

[7] GPM and CM also argue that this Court should set aside the default judgment under Federal Rule of Civil Procedure 60(b)(6), which allows a court to provide relief from a judgment for "any reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The Court does not consider this case to involve extraordinary circumstances that warrant setting aside a default judgment. *See Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1317 (11th Cir. 2000) ( Rule 60(b)(6) motions must demonstrate "that the circumstances are sufficiently extraordinary to warrant relief. Even then, whether to grant the requested relief is . . . a matter for the district court's sound discretion."). The Court has considered the arguments and controlling law and exercises its discretion to **DENY** GPM and CM's request to have the default judgment set aside under the extraordinary circumstances contemplated by Rule 60(b)(6). In the Court's judgment, nothing in the record points to "extraordinary" circumstances. The Defendants' employee whom Barnes served candidly admitted that he did not pass on the documents to the right person. That is not extraordinary in the least and certainly does not warrant the Court exercising its considerable discretion to excuse the Defendants' failure to answer the suit.

Each party to a lawsuit is responsible for their own attorney's fees unless there is an express statutory authorization to the contrary. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Barnes filed this suit under the Carmack Amendment, a statutory scheme that "creates a uniform rule for carrier liability when goods are shipped in interstate commerce." *Smith v. United Parcel Service*, 296 F.3d 1244, 1246 (11th Cir. 2002). "To accomplish the goal of uniformity, the Carmack Amendment preempts state law claims arising from failures in the transportation and delivery of goods." *Id*. In other words, any claim arising under state law, including attorney's fees and punitive damages, are expressly preempted. Therefore, any right to attorney's fees that Barnes might have must come from the Carmack Amendment itself.

GPM and CM argue that Barnes cannot recover attorney's fees in this case because "[t]here is no provision for attorney's fees under the Carmack Amendment." [Doc. 24-1, p. 19 (quoting *Travelers Prop. Cas. Co. of America v. ASF Intermodal*, No. 1:16-cv-2892-WSD, 2017 WL 894445, at *3 (N.D. Ga. Mar. 7, 2017)). However, such a broad and all-encompassing proposition completely and blatantly ignores the express plain text of the Carmack Amendment's nuanced treatment of cases involving the shipment of household goods:

> In any court action to resolve a dispute between a shipper of household goods and a carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 concerning the transportation of household goods by such carrier, *the shipper shall be awarded reasonable attorney's fees if—*

16

(1) the shipper submits a claim to the carrier within 120 days after the date the shipment is delivered or the date the delivery is scheduled, whichever is later;

(2)  the shipper prevails in such court action; and

(3) (A) the shipper was not advised by the carrier during the claim settlement process that a dispute settlement program was available to resolve the dispute;

(B) a decision resolving the dispute was not rendered through arbitration under this section within the period provided under subsection (b)(8) of this section or an extension of such period under such subsection; or

(C) the court proceeding is to enforce a decision rendered through arbitration under this section and is instituted after the period for performance under such decision has elapsed.

49 U.S.C. § 14708(d) (emphasis added). So, in stark contrast to Defendants' bold statement that the Carmack Amendment does not allow for attorney's fees, the plain text of the Carmack Amendment absolutely allows for attorney's fees—if the dispute involves the shipment of household goods.

Even a cursory, above-the-clouds-level reading of the cases that GPM and CM told the Court stood for the proposition that "there is no provision for attorney's fees under the Carmack Amendment" would easily have revealed that they have nothing to do with § 14708 because they did not involve shipments of household goods. *Travelers*, *supra*, involved the transportation of "food-grade aluminum can tops" and *Fine Foliage* dealt with a shipment of leatherleaf ferns (a.k.a. Rumohra adiantiformis). *Fine Foliage of Florida, Inc. v. Bowman Transp., Inc.*, 698 F. Supp. 1566, 1567 (M.D. Fla. Nov. 9, 1988).

This lawsuit, on the other hand, is between a shipper of household goods—Barnes—and carriers transporting those goods—GPM and CM. Therefore, this case falls squarely within the plain text of § 14708 that absolutely allows Barnes to recover her attorney's fees, provided she meets the statutory criteria. GPM and CM do not argue that Barnes fails to meet the requirements of § 14708(d)—instead, they rely exclusively on the claim that attorney's fees are not available under the Carmack Amendment. Defendants neither argued that the Court improperly applied the statute nor that the Plaintiff failed to comply with the statute. Rather, Defendants solely based their argument to set aside the attorney's fees award on the mistaken basis that the Carmack Amendment flatly prohibited *any* attorneys' fees at all.

As shown above, the Carmack Amendment expressly allows for attorney's fees when shippers of household goods meet the criteria Congress provided for in the statute. Defendants don't dispute the Court's determination that Barnes met that criteria. Accordingly, because the Court expressly rejects Defendants' only argument regarding the applicability of attorney's fees, the Court **DENIES** their motion to set aside its award of attorney's fees.

## CONCLUSION

Barnes properly served GPM and CM under California law. Therefore, the Court properly exercised personal jurisdiction over the Defendants so that the default judgment entered against GPM and CM is not void. Accordingly, the Court **DENIES**

18

GPM and CM's Special Appearance Motion to Set Aside Default Judgments [Doc. 24].

This Court also **DENIES** GPM and CM's Motion to Set Aside Attorney's Fees Judgment

[Doc. 24-1, pp. 18–19].

      **SO ORDERED**, this 30th day of October, 2020.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**